12

UP FILED

APR - 2 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ⟩                        Case No.  11-19074-B-13

Kathryn Diane Crow, ⟩          DC No. MHM-1

        Debtor. ⟩

**MEMORANDUM DECISION REGARDING TRUSTEE'S
OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Deanna K. Hazelton, Esq., appeared on behalf of the chapter 13 trustee, Michael H. Meyer, Esq.

Gary L. Huss, Esq., appeared on behalf of the debtor, Kathryn Diane Crow.

Before the court is an objection (the "Objection") by the chapter 13 trustee, Michael H. Meyer, Esq. (the "Trustee"), to confirmation of the chapter 13 plan filed by Kathryn Diane Crow (the "Debtor"). The parties waived the right to an evidentiary hearing and agreed to submit the matter on the briefs and the declarations.

The Trustee contends that the Debtor's chapter 13 plan (the "Plan") fails to

satisfy the "projected disposable income" test under 11 U.S.C. § 1325(b)(1)(B).[1] The Trustee bases his Objection on three factors: First, the Debtor, who lives with her boyfriend, included the boyfriend in her household size for the purpose of calculating deductions from income; second, the Debtor claimed deductions for transportation expenses actually expended on her amended Form 22C (the "Means Test"),[2] which exceed the amounts already allowed pursuant to the National and Local Standards published by the Internal Revenue Service (the "I.R.S. Standards"); third, the Debtor claims, as a special circumstance, a deduction for amounts that she actually spends for pet care (the "Pet Care Expenses").

The Debtor contends that her boyfriend is a dependent and that his inclusion on the Means Test is appropriate. She also contends that the additional transportation expenses (the "Additional Transportation Expenses") and Pet Care Expenses (together, the "Additional Expenses"), should be allowed as "special circumstances." For the reasons set forth below, the Trustee's Objection to confirmation of the Plan will be sustained in part and denied in part.

This memorandum contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 1325 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) & (L).

---

[1] Unless otherwise indicated, all bankruptcy, chapter, code section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[2] The Debtor filed an amended Means Test on November 14, 2010, after the Trustee filed this Objection. The court deems the Objection to relate to the amended Means Test.

2

**Background and Findings of Fact.**

The Debtor's petition was filed on August 11, 2011. With the petition, she filed her Plan together with all required documents and schedules. The Debtor lives in Sanger, California. Based on schedule I, the Debtor is employed as a teacher for the Fresno Unified School District. The Debtor has one automobile, a 2004 Dodge Dakota, which she valued at $3,725. The Debtor claims a household size of two, which includes her unemployed boyfriend who contributes nothing toward the household expenses. The Debtor's annualized current income, stated on the Means Test to be $73,026.36, is above the median income for her household size by $838 per month. Therefore, the Debtor's disposable income was determined under §1325(b)(3) and she was required to complete the Means Test.

The Debtor reports her "Total current monthly income" to be $6,085.53. The Debtor calculated her monthly expenses according to the I.R.S. Standards for a household of two in each of the categories except "transportation." On line 27A the I.R.S. Standards allow an expense of $236 for one automobile. The Debtor claimed an expense of $542 on that line. The Debtor's "Total of all deductions allowed under § 707(b)(2)" is listed as $5,376.97.[3] On line 57 the Debtor claimed an additional deduction for "special circumstances" in the amount of $370 per month for "Pet care and food (Debtor has 3 dogs and 5 cats)." Together, the Debtor's total deductions from current monthly income leave a "Monthly Disposable Income" on line 59 in the amount of $338.56.

The Plan proposes monthly payments of $339 to the Trustee for 60 months. The Debtor's Plan satisfies the §1325(a) liquidation test. She owns no real property and has no secured creditors or unsecured priority creditors. The Plan provides that

---

[3]These included: line 24A, $985, "food apparel and services, housekeeping supplies, personal care, and miscellaneous;" line 25A, $470 for "housing and utilities; non-mortgage expenses;" line 27A, $542.50 for "transportation; vehicle operation/public transportation expense." With the exception of the transportation expense, these are the "no-look" deductions allowed in these categories for a family size of two based on the I.R.S. Standards. The no-look transportation expense is $236, which is $234 less than the amount claimed by the Debtor.

1  the unsecured creditors with claims in the estimated amount of $107,867 will

2  receive a 16% distribution, or approximately $17,250 over the life of the Plan.

3  **Issues Presented.**

4      The Trustee contends that the Debtor's Plan does not commit all of her

5  projected disposable income to payment of her unsecured creditors. The Trustee

6  objects, first, to the inclusion of the Debtor's boyfriend in calculating her household

7  size; second, to the claim of the Additional Transportation Expenses in excess of

8  that permitted under the I.R.S. Standards; and third, to the deduction for Pet Care

9  Expenses as a special circumstance. In response, the Debtor filed supporting

10 declarations (the "Declarations") in an effort to explain the Additional Expenses and

11 to justify their inclusion as deductions from income on the Means Test.

12      The two issues presented here are: (1) whether the Debtor may include her

13 boyfriend as part of her household for purposes of calculating expenses permitted

14 under the I.R.S. Standards; (2) whether the Debtor may deduct her Pet Care

15 Expenses, and/or her Additional Transportation Expenses in excess of the no-look

16 deduction allowed under I.R.S. Standards.

17 **Analysis and Conclusions of Law.**

18      The analysis begins with § 1325(b)(1)(B). A chapter 13 plan may not be

19 confirmed over the objection of an unsecured creditor, or the chapter 13 trustee,

20 unless it provides for payment of the debtor's "projected disposable income" to the

21 allowed claims of unsecured creditors. The term "projected disposable income" is a

22 number that is calculated through the Means Test, based on the debtor's income and

23 various allowed deductions. The Means Test determines, *inter alia*, which statutes

24 will govern the calculation of "disposable income," how much the debtors must pay

25 to their unsecured creditors, and how long the debtors' chapter 13 plan must provide

26 for those payments.

27      The Means Test was created as part of the Bankruptcy Abuse Prevention and

28 Consumer Protection Act ("BAPCPA"), which Congress enacted "to correct

4

1   perceived abuses of the bankruptcy system" and to "help ensure that debtors who

2   *can* pay creditors *do* pay them." *Ransom v. FIA Card Services, N.A. (In re Ransom)*,

3   131 S. Ct. 716, 721 (2011) (emphasis in original, citations omitted).  The Means

4   Test was designed by Congress "to measure debtors' disposable income and, in that

5   way, 'to ensure that [they] repay creditors the maximum they can afford.'"  *Id.* at

6   725.

7          Here, the Means Test shows that the Debtor's monthly income exceeds the

8   State of California's median income which makes the Debtor "above median

9   income."  From the current monthly income, the Debtor may deduct "amounts

10  reasonably necessary for the maintenance or support of the debtor or a dependent."

11  § 1325(b)(2)(A)(I).  For "above median income" debtors, the term "amounts

12  reasonably necessary for maintenance or support" is determined with specific

13  reference to § 707(b)(2), subparagraphs (A) and (B).  § 1325(b)(3).  Section

14  707(b)(2)(A) allows the deduction of living expenses based, *inter alia*, on the I.R.S.

15  Standards.

16              *The Debtor has a Household of Two for the Purposes of the Means Test.*

17         The Means Test calculates the Debtor's applicable median income based on

18  the Debtor's "household size."  The Debtor has included her boyfriend as a member

19  of her household on that form.  In determining a debtor's "disposable income" under

20  § 1325(b)(1), the court must decide what expenses are "reasonably necessary . . . for

21  the maintenance or support of the debtor *or a dependent of the debtor*."

22  §1325(b)(2)(A)(I) (emphasis added).  The term "dependent" is not defined anywhere

23  in the Bankruptcy Code.

24         A very recent case from a bankruptcy court in the Ninth Circuit, *In re Kops*,

25  No. 11-41153-JDP, 2012 WL 438623 (Bankr. D. Idaho, Feb. 9, 2012,), lays out the

26  three main approaches to this post-BAPCPA issue.  There, the question was whether

27  the debtor, who shared custody of his two children with their mother, could claim a

28

5

1    means test household of three.  The creditor contended that the debtor was limited to

2    a household of 1.34, a number adjusted by the amount of time the children were in

3    his home.  In concluding that the debtor had a household of three, the bankruptcy

4    court reviewed the different approaches taken by the courts to this "source of

5    confusion." *Id.* at *2.

6        The "heads on beds"  approach to household size is used by the Census

7    Bureau and includes anyone living in a debtor's home at the time the case is filed.

8    *See, e.g., In re Ellringer*, 370 B.R. 905, 910-911 (Bankr. D.Minn. 2007).  The court

9    decided that this approach was too inclusive and did not account for the difference

10   in the Census Bureau calculated "median household income" and "median family

11   income." *In re Kops*, 2012 WL 11-41153-JDP, at *4.

12       The second approach *Kops* considered was the "I.R.S. Dependency

13   Approach" limiting the definition of "household" for means test purposes to persons

14   the debtor may claim as dependents on the debtor's tax return. *In re Morrison*, 443

15   B.R. 378, 385 (Bankr. M.D.N.C. 2011).  The *Kops* court concluded that such an

16   interpretation was excessively narrow and not supported by statutory interpretation.

17       [W]hile the § 707(b)(2) expenses are limited to amounts a debtor can
         claim for himself and his "dependents," there is no indication
18       Congress intended the term "household," or even the term
         "dependents," to be limited to persons that may be claimed as
19       dependents for tax purposes.

20   *In re Kops*, 2012 WL 11-41153-JDP, at *4.

21       The *Kops* court, employing tenants of statutory interpretation, determined

22   that the statute did not assign a specialized definition to the word "dependent."

23   "Because [the ordinary] definition is much broader than a dependent for tax

24   purposes only, the Court concludes the IRS dependency approach is not appropriate

25   for use throughout the means test." *Id.*

26       Finally, citing  *In re Jewell*, 365 B.R. 796, 800–02 (Bankr. S.D. Ohio 2007),

27   the *Kops* court turned to the "economic unit approach."  Initially, *Kops* explained,

28

6

this judicially-developed doctrine was devised by bankruptcy courts that were
dissatisfied with the other two approaches. The economic unit approach permitted
inclusion, as household members, individuals who were "dependents" of the debtor
in a general sense of the word, that is, "one who relies on another for support.[4] *In re
Kops*, 2012 WL 11-41153-JDP, at \*4.

> [A] household for means test purposes involves a debtor, those
> financially supported by the debtor, and the debtor's spouse in a joint
> case if she does not otherwise rely on the debtor for support.
>
> . . .
>
> Inasmuch as the economic unit approach is limited to a unit consisting
> of a debtor and his dependents, such an approach is appropriate for
> use throughout the means test. In other words, the correct approach is
> one that determines household members based on a person's financial
> dependence upon, and residence with, a debtor.

*In re Kops*, WL 11-41153-JDP, at \*4-5.

The *Kops* court declined to decide whether or not the dependent must be related to
the debtor under the Economic Unit Approach to household size. *In re Kops*, WL
11-41153-JDP, at \*n.14.

Here, the Trustee does not dispute the evidence submitted by the Debtor that
her boyfriend is unemployed, lives with her, and is supported by her. Though he
questions the propriety of such a deduction, the Trustee does not dispute the
Debtor's Declaration that she claims her boyfriend as a dependant for tax purposes.
Therefore, the question is one of law.

The boyfriend qualifies under the general definition of "dependant" as set

---

[4]The court noted with disapproval that, recently some courts had devised a test going
beyond the language of the statute, *e.g.*, *In re Morrisson*, 443 B.R. 378, 388 (Bankr. M.D.N.C.
2011). "The Code does not look to whether there is an integrated financial relationship between
a debtor and another person for whom he is claiming expense deductions. In many cases,
following that approach would turn the language of the Code on its head. . . . The Code . . . does
not allow a debtor to claim means test expenses for an individual of whom he is a dependent; he
may only claim such expenses for persons that are dependent on him." *In re Kops*, WL 11-
41153-JDP, at \*n.4. (citations omitted).

forth in *In re Kops*. In addition, he also qualifies as a dependent under the more narrow IRS dependency approach. Title 26 U.S.C. § 152 of the Internal Revenue Code defines the term "dependent" "for purposes of this subtitle." *Inter alia*, a dependent includes: an individual who lives with the tax payer all year as a member of the household, with a gross income of less than $3,650 for the year, for whom the tax payer provides more than half of the person's support for the year.[5] Thus, according to the record, the Debtor's boyfriend qualifies as a dependent for the purposes of the Means Test under both the "economic unit" approach used by *In re Kops* as well as the more restrictive "IRS dependency approach."

### *The Additional Transportation and Pet Care Expenses Do Not Qualify as "Special Circumstances."*

In addition to expenses allowed by the I.R.S. Standards, a debtor may also be able to deduct expenses which can be categorized as "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces." § 707(b)(2)(B)(I). The debtor has the burden of proof to establish the "special circumstances" through an analysis involving a four-part inquiry. To justify an additional expense or adjustment to current monthly income, the debtor must (1) demonstrate that there is no reasonable alternative for the additional expense (§ 707(b)(2)(B)(I)), (2) itemize the additional expense (§ 707(b)(2)(B)(ii)), (3) provide documentation for the expense (§ 707(b)(2)(B)(ii)(I)), and (4) provide a detailed explanation of the special circumstances that make the expense necessary and reasonable (§ 707(b)(2)(B)(ii)(II)).[6] The debtor must attest under oath as to the

---

[5]The relationship may not violate local law.

[6]There is no supporting documentation in the record for the Additional Expenses. The Debtors contend that their supporting documents were provided to the Trustee for review and the Trustee does not contend in this Objection that the Debtors' Additional Expenses were not adequately itemized or documented by the time this matter was submitted for a ruling. This Objection is based solely on the first and fourth "special circumstances" factors identified above.

8

accuracy of the information offered to demonstrate that the "special circumstance" expenses or adjustments to income are required (§ 707(b)(2)(B)(iii)).

For purposes of the Means Test, Congress did not provide an exhaustive list of "special circumstances," but it did give examples of situations which the court should consider as qualifying. It has been noted, that the examples given by Congress (a serious medical condition or a call to active duty in the Armed Forces) "both constitute situations which not only put a strain on a debtor's household budget, but they arise from circumstances normally beyond the debtor's control." *Egebjerg v. United States Trustee (In re Egebjerg)*, 574 F.3d 1045, 1053 (9th Cir. 2009) (citation omitted).

Here, the Debtor contends in her Declaration that the Additional Transportation Expenses are reasonable and necessary because she lives in a rural area. This court decided, in *In re Greer, et al*, Case # 10-63833, 2011 U.S. Bankr. Ct. (Sept. 30, 2011), that as to categories under which the I.R.S. Standards provide a "no-look" amount, the debtor may not deduct expenses based on higher actual costs unless the expenses qualify as a special circumstance. The Debtor took the full "no-look" deductions permitted on the Means Test, pursuant to the I.R.S. Standards as adjusted for family size and locale: on lines 24A ("food, apparel and services, housekeeping supplies, personal care, and miscellaneous"), 24B ("health care"), 25A ("Housing and utilities–non mortgage"), and 25B ("housing and utilities; mortgage/rent expense"). With some exceptions not applicable here, the Bankruptcy Code does not allow the deduction of actual expenses, in excess of those specifically allowed by the I.R.S. Standards, simply because the debtor actually spends that amount of money. Indeed, the Bankruptcy Code specifically states that certain deductions for "above-median income" debtors "*shall be* the debtor's applicable monthly expense amounts specified under the [IRS] Standards . . . in effect on the

9

1   date of the order for relief." § 707(b)(2)(A)(ii)(I).  (Emphasis added.)[7]  Clearly, with

2   the enactment of BAPCPA, Congress intended that debtors who seek bankruptcy

3   relief, and whose lifestyle may interfere with the ability to fully pay their creditors,

4   must be prepared to make some adjustments to their lifestyle in a good faith effort to

5   repay the creditors as much as they can afford.  The Debtor is essentially asking her

6   creditors to fund the cost of her lifestyle.

7         The wording of the Bankruptcy Code allows the court some discretion to

8   allow a "special circumstance" expense when there is a true need for the expense

9   due to circumstances that are clearly beyond the debtor's control and for which there

10  is no reasonable alternative.  Cases in which the courts have allowed the deduction

11  of extra expenses usually involve extraordinary situations.  Here, the Debtors'

12  declaration fails to show that all of the additional expenses she has claimed are the

13  result of "extraordinary circumstances" and factors "beyond her control."  Although

14  job-related commuting expenses could conceivably qualify as "special

15  circumstances," if properly documented, the Debtor has presented no evidence to

16  the court that the mere fact that she lives in a rural area and commutes to her job

17  rises to the level of special circumstances.  Similarly, the Debtor's Declaration does

18  not offer any facts from which the court could decide that the Pet Care Expenses rise

19  to the level of "special circumstances."  However, the court's decision has no

20  bearing on the Debtor's choice of how, or if, she may care for her pets or drive her

21  automobile.  The Debtor herself must decide how to allocate her resources permitted

22  under the Means Test.

23         The Debtor has expressed a willingness to modify her Plan when her

24  boyfriend becomes employed.  Decl. at ¶3, Nov. 14, 2011, ECF No. 23.  The Trustee

25

26         [7]Line 26 of the Means Test provides for consideration of additional "housing and
27  utilities" expenses to which a debtor may be entitled under the I.R.S. Standards if it can be shown
    that the I.R.S. Standards "do not accurately compute the allowance."  The Debtors did not take
28  any  deduction on line 26.

10

has not objected to the Plan on the grounds of good faith or presented any facts which would support a finding that the Debtor's petition or Plan was not filed in good faith.

**Conclusion.**

Based on the forgoing, the Trustee's Objection is sustained in part and overruled in part. For purposes of the Means Test, the Debtor may claim a household size of two. However, the Debtor has failed to satisfy her burden of proof with regard to the calculation of projected disposable income and compliance with §1325(b)(1)(B). The Debtor may not deduct either the Additional Transportation Expenses or the Pet Care Expenses from her projected monthly income. Confirmation of the Plan will be denied without prejudice.

Dated: April ___2___, 2012

W. Richard Lee
United States Bankruptcy Judge

11

Kathryn Diane Crow, Case No. 11-19074-B-13/DC No. MHM-1

Kathryn Diane Crow
426 N. Frankwood
Sanger, CA 93657

Gary L. Huss, Esq.
Attorney at Law
3649 W. Beechwood Ave., #102
Fresno, CA 93711

Michael H. Meyer, Esq.
Chapter 13 Trustee
P.O. Box 28950
Fresno, CA 93729-8950

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare St., Ste. 1401
Fresno, CA 93721